SKC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emmanuel Walker, | No. CV-22-01401-PHX-DWL (ESW) |
| Plaintiff, | |
| v. | **ORDER** |
| Arizona, State of, et al., | |
| Defendants. | |

Plaintiff Emmanuel Walker, through counsel, brought this civil rights action as guardian and on behalf of Isaac Contreras ("Isaac"), an incapacitated adult who was confined in the Arizona State Hospital ("ASH"). Now pending before the Court is a Rule 12(c) motion for partial judgment on the pleadings filed by Defendants the State of Arizona, ASH Superintendent and Chief Executive Officer Aaron Bowen, Arizona Department of Health Services ("ADHS") Interim Director Donald Herrington, ADHS Director Cara Christ, M.D., ASH Chief Medical Officer Katherine Woods, D.O., and their spouses. (Doc. 28.) The motion is fully briefed. (Doc. 31, 36.) For the following reasons, the motion is granted.

**I.  Background**

After Plaintiff filed this action in Maricopa County Superior Court, Defendants removed it to this Court. (Doc. 1.) The complaint asserts 42 U.S.C. § 1983-based Eighth and Fourteenth Amendment claims against certain Defendants, as well as state-law claims against all Defendants, based on Isaac's alleged unconstitutional conditions of confinement

and lack of restorative psychiatric treatment while confined at ASH from 2016 to 2022. (Doc. 1-4.) The complaint alleges the following facts in support of these claims:

As a child, Isaac endured trauma, abandonment, and abuse, including sexual abuse by a violent older man. (*Id.* ¶ 20.) By adolescence, Isaac suffered serious mental illness and could not remain in school past the eighth grade. (*Id.* ¶ 21.) At age 15, Isaac killed his abuser, and he was sentenced to the Arizona Department of Corrections, Rehabilitation and Reentry ("ADCRR") from August 16, 2000 until May 25, 2010. (*Id.* ¶ 22.)

After his release from ADCRR, Isaac continued to struggle with untreated mental illness, and in 2015, he was rearrested and charged with aggravated assault for assaulting his then-girlfriend during a psychotic episode. (*Id.* ¶ 23.) Isaac was initially found incompetent to stand trial and ordered to participate in Yuma County's Restoration to Competency Program. (*Id.* ¶ 24.) After successfully completing the program, Isaac was found Guilty Except Insane ("GEI") based on a judicial determination pursuant to A.R.S. § 13-502 that he was "afflicted with a mental disease or defect of such severity that he did not know his criminal act was wrong." (*Id.* ¶¶ 25-26.) As a result, Isaac was not sentenced to prison and was instead committed to ASH for restorative psychiatric treatment. (*Id.* ¶ 27.)

At some point, Isaac was found seriously mentally ill ("SMI") under A.R.S. § 36-550. (*Id.* ¶ 28.)[1] To be designated SMI, an individual must receive a professional assessment showing he meets a two-pronged test: (1) he has a qualifying diagnosis; and (2) he is functionally impaired in at least one of four domains: inability to live independently without supervision, risk of harm to self or others, dysfunction in key roles such as school or work, and risk of further psychological deterioration. (*Id.* ¶ 30.) Isaac had long suffered from several qualifying diagnoses, including bi-polar disorder, psychotic disorder, personality disorder, schizoaffective disorder, schizophrenia, and post-traumatic stress

---

[1] It is not clear from the allegations in the complaint whether this finding occurred before or after Isaac's aggravated assault conviction and commitment to ASH.

disorder, and upon admission to ASH, he was functionally impaired in all four domains. (*Id.* ¶¶ 31-32.)

ASH is charged by the State to provide inpatient care and treatment to patients with mental disorders, personality disorders, and emotional conditions. (*Id.* ¶ 33.) ASH and its various agents, employees, and representatives had a duty to provide Isaac and other patients safe and therapeutic treatment, which included developing individualized treatment and discharge plans ("ITDPs") for each patient. (*Id.* ¶¶ 35-36.) Despite this, no meaningful ITDP ever existed for Isaac, and even though Isaac was diagnosed as SMI, ASH staff responded to manifestations of his illness with violence and unlawful punishment, including physical restraint and seclusion. (*Id.* ¶ 37.) A staff member once placed Isaac in an illegal chokehold as retaliation for Isaac's psychotic behaviors, and a physician once ordered Isaac be placed in physical restraints and secluded from other patients for 15 hours, in violation of Arizona Administrative Code ("A.A.C.") R9-21-204. (*Id.*) After a review of these incidents, the Arizona Health Care Costs Containment System ("AHCCCS"), which oversees rights violations of SMI patients, found that ASH violated Isaac's rights as an individual with SMI and required it to take corrective measures relative to staff training and patient safety. (*Id.* ¶ 38.)

Without proper treatment, and after repeated assaults and acts of violence, Isaac's mental health steadily deteriorated, and Isaac became more and more paranoid, fearful, hypervigilant, and prone to outbursts of anger and destruction of property, for which he continued to receive punishment rather than treatment. (*Id.* ¶ 39.) Instead of modifying Isaac's ITDP in response to these issues, from July 17, 2020 until Isaac's release from commitment on May 12, 2022, ASH staff placed Isaac in seclusion, where he was isolated from other patients and staff in a small interior room designated "Seclusion Room A-340." (*Id.* ¶ 40.) The room had a concrete slab for a bed and was adjoined by a short hallway to a bathroom. (*Id.* ¶ 41.) The only window was an internal glass pane between Isaac's bedroom and the nursing station, though the window was often covered with a tarp by ASH personnel. (*Id.* ¶ 42.)

Under Arizona law, a healthcare provider must follow procedural safeguards before placing an SMI patient in seclusion, including that the seclusion must be ordered by a physician and that the physician must provide oversight at frequent intervals. (*Id.* ¶ 45.) ASH personnel disregarded these duties and knowingly, willfully, and intentionally ignored state and federal law and breached their duty of care to Isaac. (*Id.* ¶¶ 46-47.)

Plaintiff asserts Eighth and Fourteenth Amendment claims against Defendants Bowen, Christ, Herrington, and Woods in Counts One and Two and state-law statutory and tort claims against all Defendants in Counts Three through Seven. (*Id.* at 14-26.)

## II.   Legal Standard

A motion for judgment on the pleadings under Rule 12(c) is "functionally identical" to a Rule 12(b)(6) motion to dismiss. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). *See also Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog."). Thus, a Rule 12(c) motion "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. Cty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999). "For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

## III.  The Parties' Arguments

Defendants move for judgment on the pleadings on Count Three, which is captioned "Statutory Violations and Mandatory Penalties for Illegal Seclusion." (Doc. 1-4 at 18.)

Count Three is a claim pursuant to A.R.S. § 36-516, under which "[a]ny knowing violation of a person's rights under this article shall give him a cause of action for the greater of either one thousand dollars or three times the actual amount of damages." (*Id.*

¶ 80.) The complaint alleges that Defendants violated Isaac's rights protected by three provisions: (1) A.R.S. § 36-504; (2) A.R.S. § 36-513; and (3) and A.A.C. R9-21-204. (*Id.* ¶¶ 81-83.) The complaint further alleges that violations of these provisions are actionable under A.R.S. § 36-516. (*Id.*) Finally, the complaint alleges that "each time a regulation governing the rights of an individual with SMI was violated, Isaac accrued a new, independently actionable violation," amounting to "millions of dollars in damages with the precise amount to be determined at trial." (*Id.* ¶¶ 48, 85.)

Defendants do not dispute that the three cited provisions could provide the foundation for a claim under § 36-516, but they argue that § 36-516 and the other enumerated rights in article 2[2] only pertain to *civilly* committed patients. (Doc. 28 at 3-4.) Defendants rely on § 36-504, which provides that "[e]very person undergoing treatment or evaluation *pursuant to this chapter* is entitled to the rights set forth in this chapter and to rights that the director specifies by rule." (*Id.*) Defendants argue that because Isaac was *criminally* committed to ASH pursuant to A.R.S. §§ 13-502(D) and 13-992(A), he was not receiving treatment pursuant to title 36, chapter 5. (*Id.*) Defendants also argue that §§ 13-502(D) and 13-992(A) "do not begin to suggest that SMI individuals like [Isaac] who are criminally committed are entitled to the benefits of civil commitment like those [enumerated in title 36, chapter 5, article 2]." (*Id.* at 4.) Defendants further argue that because the enumerated rights in chapter 5, article 2 only apply in the context of civil commitment, the corresponding regulations in the A.A.C. upon which Plaintiff relies, including R9-21-204, also did not apply to Isaac. (*Id.* at 5.) In support of this position, Defendants note that R9-21-204 appears in chapter 21 of the A.A.C., entitled "Arizona Health Care Cost Containment System (AHCCCS) Behavioral Health Services for Persons with Serious Mental Illness," which establishes regulations for mental health agencies that "provid[e] behavioral health services . . . to clients under A.R.S. title 36 chapter 5." (*Id.*, quoting A.A.C. § R9-21-102.) Defendants likewise note that R9-21-201(A) identifies

---

[2] Title 36 of the Arizona Revised Code is entitled "Public Health and Safety." Chapter 5 of title 36 is entitled "Mental Health Services." Article 2 of chapter 5 is entitled "Patient's Civil and Legal Rights."

those clients' rights, in part, as those "prescribed in A.R.S. §§ 36-504 through 36-517.02," meaning those set forth in chapter 5 of title 36. (*Id.* at 5-6.) Defendants refer to these provisions as the "civil commitment statutes." (*Id.*) Defendants further note that R9-21-201(A), like chapter 5, enumerates many rights that do not ordinarily apply to criminally convicted individuals like Isaac. (*Id.* at 6.) These include the right to vote, the right to make and receive confidential phone calls and to send and receive uncensored mail, the right to visitation, the right not to be fingerprinted or photographed without authorization, and "[t]he same civil rights as all other citizens of Arizona, including the right to marry and to obtain a divorce, to have a family, and to live in the community of their choice without constraints upon their independence, except those constraints to which all citizens are subject." (*Id.*) In contrast, Defendants note that convicted felons do not have the right to vote and that prisoners do not have the right to make and receive confidential phone calls, send and receive uncensored mail, or not to be fingerprinted or photographed without authorization. (*Id.*)[3]

Plaintiff disagrees that the cited statutory provisions and regulations are "civil commitment statutes" that are inapplicable to criminally committed patients receiving treatment at ASH. (Doc. 31 at 7.) Plaintiff notes that there is no provision in title 36 that expressly limits its application to civilly committed patients. (*Id.* at 7-8.) Plaintiff likewise argues that chapter 5 broadly applies to all functions of ASH and to the provision of mental health care in any Arizona facility. (*Id.* at 8.) Plaintiff also notes that article 2, which contains the provisions at issue here, does not exempt criminally committed patients from its protections. (*Id.*) According to Plaintiff, "a 'patient' is broadly defined in § 36-501 as 'any person who is undergoing examination, evaluation or behavioral or mental health

---

[3] Defendants also argue for the first time in their reply that the A.A.C. regulations on which Plaintiff relies do not apply to ASH because the Arizona legislature's grant of authority to the director of AHCCS to issue those regulations expressly excluded ASH. (Doc. 35 at 8, citing A.R.S. § 36-502(A).) The Court does not reach this issue because it is unnecessary to the outcome here and also because "[t]he district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

treatment under this chapter.' (*Id.*, quoting A.R.S. § 36-501(31).) Plaintiff argues that the Arizona legislature could have chosen to deny the protections at issue to those criminally committed to ASH but chose not to do so. (*Id.*) Plaintiff makes similar arguments about A.A.C. § R9-21-201(A), noting that a corresponding definition section defines "client" as "an individual who has a qualifying serious mental illness and is being evaluated or treated for a mental disorder by or through a health plan." (*Id.*, quoting A.A.C. R9-21-101(B).) Plaintiff argues that this definition encompasses Isaac while he was at ASH. (*Id.*)[4] Plaintiff does not dispute that some provisions in title 36, chapter 5 would not apply to Isaac, such as those in article 3, establishing procedures for "Voluntary Admissions," or those in article 4, governing "Court-Ordered Evaluations." (*Id.* at 10.) Plaintiff states that, "of course[,] the entirety of chapter 5 governing every aspect of mental health evaluation and treatment in Arizona does not apply to Isaac and other patients committed under the criminal code." (*Id.*) Nevertheless, Plaintiff argues that there is nothing in chapter 5, article 2—which, he argues, grants broad protections to "[e]very person undergoing treatment or evaluation pursuant to [title 36, chapter 5]"—that would exclude patients treated at ASH or anywhere else from its protections just because they were criminally convicted. (*Id.*) Plaintiff also argues that the few examples of rights from article 2 that may conflict with the criminal code "do[] not transform the entirety of article 2 into the 'civil commitment statutes' so as to limit their application to just civilly committed patients." (*Id.* at 11.)

**IV. Analysis**

Under A.R.S. § 36-516, "[a]ny knowing violation of a person's rights under *this article* shall give him a cause of action . . . ." *Id.* (emphasis added). "[T]his article," in turn, refers to article 2 of chapter 5 of title 36 of the Arizona Revised Code. Thus, the parties' dispute thus turns on whether a patient criminally committed to ASH under Arizona's criminal code has rights under article 2 of chapter 5 of title 36.

---

[4] The complaint alleges that Isaac qualified as SMI but does not allege that Isaac was receiving treatment by or through a health plan.

- 7 -

Unfortunately, the parties have not cited any caselaw analyzing this issue. Nor has the Court been able to locate any cases analyzing whether a cause of action exists under § 36-516 in this context. In absence of such authority, the Court "interpret[s] [the] statutory language in view of the entire text, considering the context and related statutes on the same subject. A cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous." *Nicaise v. Sundaram*, 432 P.3d 925, 927 (Ariz 2019) (citations omitted).

The rights afforded to patients under chapter 5, article 2, "Patient's Civil and Legal Rights," include such things as the right to an independent evaluator at commitment hearings, A.R.S. § 36-505; the right to privacy, which includes the right not to be fingerprinted or photographed without consent, *id.* § 36-507; the right to personal possessions and to wear one's own clothing, which may be denied only "if necessary to protect the safety of the patient or others," *id.*; the right not to be "subjected to seclusion . . . except in case of emergency for the safety of the person or others or as a part of a written plan for the treatment of the patient," *id.* § 36-513; and rights to visitation, telephone, correspondence, and religious freedom, which include the rights to make and receive confidential calls and to correspond by mail with any person without censorship, *id.* § 36-514.

Chapter 5 does not, in contrast, address or set forth any procedures for criminal commitment. Instead, as Defendants note, the statute governing criminal commitment of individuals found GEI of a criminal act is A.R.S. § 13-502(D). That statute requires that the criminal court judge "suspend the [criminal] sentence and . . . order the defendant to be placed and remain under the jurisdiction of the superior court and committed to a secure state mental health facility under the department of health services pursuant to § 13-3992 for the length of that sentence." *Id.* Section 13-3992(A), in turn, provides that "[a] person who is found guilty except insane pursuant to § 13-502 shall be committed to a secure mental health facility for a period of treatment." *Id.*

Notably, § 13-3992(B), which addresses the circumstances under which a criminally committed individual may be entitled to release, requires, among other things, advance notice to the director of the mental health facility, who must then "submit a mental health report . . . addressing whether the person *meets the standard for and should be subject to involuntary hospitalization pursuant to title 36, chapter 5*." *Id.* (emphasis added). This reference to continued civil commitment under title 36, chapter 5 strongly suggests that individuals who are found GEI and committed to a secure state mental health facility are *not*, during that time, considered persons undergoing treatment or evaluation pursuant to title 36, chapter 5. The array of statutory provisions under A.R.S. § 13-3994 through A.R.S. § 13-4001, which apply to GEI individuals placed under the jurisdiction of the superior court, further support the conclusion that the criminal commitment of such individuals is governed by an entirely different statutory framework than the framework governing the civil commitment of those receiving treatment under title 36, chapter 5.[5]

This interpretation is also supported by the fact that many of the provisions in chapter 5, article 2—such as the right to vote or to freely send and receive mail—conflict with the Arizona criminal code (or the limitations typically placed on convicted prisoners during incarceration). Plaintiff's response—that the inapplicability of certain provisions to criminally committed patients "does not transform the entirely of article 2 into the 'civil commitment statutes' so as to limit their application to just civilly committed patients"—is unpersuasive. Section 36-516 creates a cause of action to sue for violations of the rights provided under chapter 5, article 2. It does not exclude any of those rights from its ambit. It is illogical to presume that the Arizona legislature would have authorized the imposition of certain limitations on the rights of criminally committed individuals, via the criminal code, but then authorized those same persons to bring a civil action based on the imposition of those limitations. The Court must "interpret and apply statutory language in a way that

---

[5] Sections 13-3994 through -4001 address such matters as requested hearings, conditional release, probation, and appeal rights.

will avoid an untenable or irrational result." *State v. Estrada*, 34 P.3d 356, 360 (Ariz. 2001).

Plaintiff's other arguments to the contrary are unavailing. Plaintiff urges the Court to conclude that the Arizona legislature made a conscious choice not to deny the protections of chapter 5, article 2 to prisoners criminally committed to ASH and other state mental health facilities, but this argument overlooks that the legislature *did* cabin the rights set forth in chapter 5, article 2—including the right to sue for the vindication of those rights under § 36-516—to persons receiving treatment "under this chapter" or "pursuant to this chapter." A.R.S. §§ 36-501(31), 504.

Because Plaintiff's statutory claim under § 36-516 must be dismissed, the Court need not resolve whether A.A.C. R9-21-201(A) and R-9-21-204 are incorporated into chapter 5, article 2 as "rights that the director specifies by rule" and, if so, whether these regulatory provisions pertain to ASH.[6]

…

…

---

[6] In his response, Plaintiff relies on evidence not attached to the complaint to show that, in 2017, Isaac filed a grievance against ASH regarding his seclusion and, on Isaac's appeal to AHCCCS of the denial of that grievance, AHCCCS held in Isaac's favor, finding that ASH had violated his rights under A.A.C. § R9-21-204. (Doc. 31 at 13-14; Doc. 32 at 50-55.) Plaintiff argues this finding shows that AHCCCS rejected the position taken by ASH's Chief Compliance Officer at that time that it was "questionable" whether these regulations applied to Isaac's treatment. (Doc. 31 at 14.) But even assuming this evidence is properly before the Court under Rule 12(c), perhaps under the theory that it was incorporated by reference in the complaint (Doc. 1-4 ¶ 38), it does not change the analysis here. AHCCCS's administrative determination that the requirements set forth in R9-21-204 applied when resolving Isaac's grievance appeal does not mean AHCCCS found, as a matter of law, that Isaac was a person receiving treatment "under chapter 5." And even if that conclusion could be inferred from AHCCCS's ruling, such an interpretation does not have the force of law. *Maricopa Cnty. v. Arizona Health Care Cost Containment Sys.*, 880 P.2d 728, 729 (Ariz. Ct. App. 1994) ("Although administrative interpretations of statutes should be accorded some weight, they are not binding on this court"). AHCCCS's finding that Isaac had a legitimate grievance regarding ASH's use of seclusion also does not alter the Court's determination that Isaac was not receiving treatment under title 36, chapter 5 and therefore does not have a cause of action under A.R.S. § 36-516.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' motion for partial judgment on the pleadings (Doc. 28).

(2) Defendants' motion for partial judgment on the pleadings (Doc. 28) is **granted**. Count Three of the Complaint is **dismissed** without leave to amend.

Dated this 14th day of February, 2024.

Dominic W. Lanza
United States District Judge